FLORENCE PIPE FOUNDRY AND MACHINE COMPANY and
WALTER WOOD

*v.*

THE BURLINGTON CITY LOAN AND TRUST COMPANY, LEONARD
PECKETT, EDWARD L. HERNDON and W. HOWARD RAMSAY,
creditors' committee, and SLOSS-SHEFFIELD STEEL AND
IRON COMPANY, a corporation.

[Submitted January 29th, 1919. Decided March 7th, 1919.]

1. In a suit to prevent the surrender for cancellation of a bond and mortgage given by one of the complainants to one of the defendants, evidence *held* to show that the mortgagor had formed a company and caused that company to execute and deliver, or tender for delivery, its bonds and mortgages as agreed upon with the creditor, and thereby he satisfied his personal bond and mortgage, and was entitled to the surrender thereof.

2. Where the private counsel of a creditor company was also its selection as a member of the creditors' committee, his actions in this dual capacity must be regarded primarily as those of a committeeman.

On final hearing on bill, counter-claim and proofs.

*Mr. Marshall H. Diverty* and *Mr. J. H. Brinton* (of the Philadelphia bar), for the complainants.

*Mr. Ernest Watts,* for the defendant Burlington City Loan and Trust Company.

*Messrs. Collins & Corbin* (*Mr. Gilbert Collins* and *Mr. Edward A. Markley* of counsel), for the defendant creditors' committee.

*Messrs. Pitney, Hardin & Skinner* (*Mr. Corbin Howell* and *Mr. Louis H. Freedman* (of the New York bar) of counsel), for the defendant Sloss-Sheffield Steel and Iron Company.

·BACKES, V. C.

The object of this bill is to secure the surrender for cancellation of a bond and mortgage given by Walter Wood to the· Burlington City Loan and Trust Company, on the plant formerly of the Florence Iron Works, at Florence, New Jersey, on the ground that they have· been satisfied, and to compel the defendant Sloss-Sheffield Steel and Iron Company to accept bonds of the Florence .Pipe Foundry and Machine Company secured by a mortgage on said plant, in satisfaction of its debt against the Florence Iron Works.  The Sloss-Sheffield company has answered, and by its counter-claim· prays that the mortgage be ·decreed to be a lien in its. favor and that it be foreclosed; or in the alternative that the complainant Walter Wood and the three defendants, Leonard Peckett, Edward L. Herndon and W. Howard Ramsay, a creditors' committee of the Florence Iron Works, be held personally liable for the payment of its claim.

The circumstances that lead up to this litigation are these: On October 22d, 1914, the United States district· court for the district of New Jersey appointed a receiver for the Florence Iron Works, which was then indebted to various creditors in an amount exceeding $500,000, in addition to upwards of $500,000 due to what may be called the Wood estate.  The Wood estate had up to that time controlled the Florence Iron Works and the Camden Iron Works, at Camden, New Jersey.  After the receiver advertised the plant of the Florence Iron Works for sale a creditors' committee was formed composed of Messrs. Peckett, Herndon and Ramsay, and on March 22d, 1916, the creditors entered into a protective agreement whereby they assigned their claims to the creditors' committee to represent them in all matters relating to their claims "in order to legally and efficiently carry out and execute this agreement," and did

"also constitute and appoint the said committee their, and each of their true and lawful attorneys irrevocable to execute in their behalf any contracts or other instruments in writing, and to do such acts and· things as to said committee may seem proper, to enable the committee to carry out the duties created in. this agreement in all. its parts and details; hereby giving and . granting to the said committee full power and authority to do and perform all and every act and thing which it may deem requisite and necessary to be done in and about the premises

as fully to all intents and purposes as the creditors might or could do personally, hereby ratifying and confirming all that the committee shall lawfully do or cause to be done by virtue hereof."

The preamble of the protective agreement indicates that its primary purpose was to protect the creditors by the purchase of the plant at the sale, but the powers granted were more extensive, and *inter alia* authorized the committee to represent the creditors in the event that it should not be the purchaser. The Sloss-Sheffield company was one of the signatories. The committee was a bidder at the sale, but the property was struck off to Walter Wood. On the day after the sale, June 29th, 1916, Mr. Wood, by circular letter addressed to the creditors, proposed that—

"If you will assign your claim to the Burlington City Loan and Trust Company, giving them authority to use the claim so deposited (together with all dividends that may be declared on the same) for the payment for the property bought by myself, then I will agree upon the settlement with the receiver to cause to be executed a mortgage on the property purchased by me, consisting of the plant of the Florence Iron Works, dwelling-houses, lots of land and farm for such sum as may be necessary to secure all claims so deposited and on the basis of one hundred cents on the dollar, with six per cent. interest.

"I will further agree in said mortgage that the net rents, from the dwelling-houses, amounting to about $15,000 a year, shall be set aside as a sinking fund, to pay the principal of the mortgage—drawings to be made every six months to pay the bonds that shall be issued under said mortgage, for said claims—the smaller claims to have the preference in the drawings for payment."

He also included the proposition to the creditors of the Camden Iron Works (many of whom were creditors of the Florence Iron Works) that—

"You to assign your claim to the Burlington City Loan and Trust Company, to be held until the sale of the property (and financial arrangements can be effected) with authority to said trust company to use said claims, as is provided with reference to the Florence Iron Works, then I will agree, upon becoming purchaser of the property, to endorse serial notes for your claim, payable, one, two, three, four and five years, respectively, with interest at five per cent., with the privilege, at any time, of anticipating payment of the unmatured notes."

He stipulated that the propositions were to be considered together. Later, in negotiations with the committee, Mr. Wood supplemented his proposition, stating by letter to Mr. Ramsay, of the committee, under date of August 2d, 1916, that it was his intention not to include in the mortgage to be issued any of the Walter Wood (Wood estate) claims, which amounted, roughly, to about $525,000, and that the mortgage would carry interest at six per cent., payable semi-annually and contain the usual default clauses. In confirmation of this the committee wrote to Mr. Wood on the same day that they understood that the amount of his claim was to be represented in junior securities of the new corporation to be organized by him and

"if for any reason you conclude not to organize a corporation, but to own the property individually, the mortgage which is to be given to the depositing creditors is to be accompanied by your individual bond. The mortgage is to include all of the real estate, plant, machinery, and all personal property in use at the works, such as tools, flasks, etc., and all of the rents, of the dwellings are to constitute the sinking fund."

On August 4th the creditors' committee submitted the modifications to the creditors and recommended that as modified they accept Mr. Wood's proposition. They also recommended that the proposition concerning the Camden Iron Works be accepted, stating "that the two propositions as to Florence and Camden must be accepted jointly as one by the creditors of both."

The creditors of the Florence Iron Works, including the Sloss-Sheffield company, accepted and assigned their claims, respectively, to the trust company, and authorized and empowered

"the said Burlington City Loan and Trust Company to use the claims so deposited (together with all dividends to be declared on the same) for the payment for the property of the Florence Iron Works, purchased by Walter Wood at the sale made by Harold Wells, receiver, on Wednesday, June 28th, 1916, upon the said Walter Wood causing to be executed a mortgage on the property purchased by him, consisting of the plant of the Florence Iron Works, the dwelling-houses, lots of land and farms, for such sum as may be necessary to secure all claims against the Florence Iron Works, so deposited with said trust company, said mortgage to bear six per cent. interest, and containing a provision that a sinking fund derived from the rents from said dwellings amounting to about $15,000 a year, shall be set aside to pay the bonds given for said claims."

The assignment of the Sloss-Sheffield company was sent by mail on November 14th, 1916, to. Mr. Ramsay by the president of the company with the advice that he had been authorized to accept Mr. Wood's terms. On the following day Mr. Ramsay forwarded the assignment to Mr. Wood. It was the last one in. On November 15th, 1916, Mr. Wood settled with the receiver and obtained his deed. In the settlement the trust company gave the receiver a receipt for $185,112.71, being seventy-five per cent. of the estimated dividends on the claims assigned to the trust company. On February 15th, 1918, Walter, Wood conveyed· the plant to the Florence Pipe Foundry and Machine Company, which he had caused to be incorporated for the purpose of carrying out his scheme, and on February 20th the Florence Pipe Foundry and Machine Company executed and delivered to the Commonwealth Title Insurance and Trust Company of Philadelphia, as trustee, $517,000 of its bonds (the aggregate of the claims assigned to the Burlington City Loan and Trust Company with interest thereon to March 15th, 1917) and its mortgage or deed of trust dated on that day covering the plant to secure the payment of the bonds. The bonds, together with interest from March 15th, 1917, were delivered to the committee in settlement, and were by the committee distributed among the creditors in proportion to their claims. All of them accepted the bonds and cash in satisfaction of their claims except the Sloss-Sheffield company. Within a week before the final settlement Mr. Ramsay, of the committee, who was also the private counsel of the Sloss-Sheffield company, was notified by the company through its general counsel not to accept the settlement, and for this reason—and it is the ground upon which the counter-claim is based: When the receiver settled with Walter Wood and delivered to him the deed for the plant and received from the Burlington City Loan and Trust Company its receipt for the estimated dividends on the claims assigned to it, Mr. Wood had not perfected his program; he had not incorporated the company which was intended to take over the property and issue the bonds and execute the mortgage; and until this was done, as a makeshift, to secure the trust company in the meantime, he gave his personal bond for $500,000, payable on de-

mand, and his mortgage on the plant to secure the bond; and on the delivery of the bond and mortgage the trust officer gave Mr. Wood a memorandum, which reads as follows:

"In connection with the settlement between Walter Wood, purchaser of the plant of the Florence Iron Works, and Harold B. Wells, receiver, certain claims of creditors of the Florence Iron Works have been assigned to the Burlington City Loan and Trust Company, trustee, with instructions to pay to Walter Wood the dividends that may be allowed on said claims from the receiver, provided that the said Walter Wood secures such claimants by bonds to be given by the party to whom he shall transfer the title of the Florence Iron Works, which bonds are to be secured by mortgage on the plant of the company purchased by him, and so to be transferred, and as the parties are not prepared at this time to execute and deliver the formal bonds and the trust mortgage securing the same, it is agreed that there shall be executed by the said Walter Wood and delivered to the said trust company as temporary security to be held by them until such time as it is necessary for the due execution of said bonds and trust mortgage, a bond and mortgage on such plant in the sum of $500,000, which bond and mortgage is to be canceled and surrendered to Walter Wood at the time the bonds and the trust mortgage are executed and delivered.

"It is further understood between the parties that said formal bonds and trust mortgage are to be ready for execution and delivery within ninety (90) days from the date hereof. November 15th, 1916."

In anticipation of this course the directors of the trust company had passed a resolution that its second vice-president

"be and he is hereby authorized to receipt to Harold B. Wells, receiver of the Florence Iron Works, for claims assigned to this trust company, upon the delivery of deed by the said Harold B. Wells, receiver, to Walter Wood, for the plant and property of the Florence Iron Works, and upon the said Walter Wood delivering to said trust officer a bond and mortgage on the plant so conveyed in the sum represented by the receipt to be given by said trust officer:

"It being understood and agreed that said bond and mortgage is to be held as temporary security for said amount, for the protection of this trust company, until the bonds and mortgage securing the claims have been prepared and executed and delivered to this trust company for the several parties who have assigned their said claims."

The delay that ensued in perfecting the plans was in a large measure due to the efforts being put forth by Mr. Wood to liquidate the affairs of the Camden Iron Works and was apparently acquiesced in by all the parties concerned until November of

1917, when the creditors' committee notified the Burlington City Loan and Trust Company to make demand for the payment of the mortgage, which it did. This was done, obviously, and, as was conceded by the committee, to hasten Mr. Wood into a conclusion of the arrangement, and this it accomplished. The Sloss company now claims this mortgage.

"Counsel for Sloss company does not contend [I quote from the brief] that had Walter Wood, instead of giving his individual bond and mortgage, caused a corporation to have been formed and had then offered the bonds of such corporation in payment of the claims of creditors, that he would not have fulfilled his contract obligation with Sloss company. Counsel for Sloss company, however, does contend that having adopted a course in fulfillment and performance of his obligation and executed and delivered his individual bond and mortgage, that his contract was then fully completed and performed and he could not thereafter, without the consent of the Sloss company, substitute in place of his bond and mortgage other securities or the bond and mortgage of a corporation thereafter formed."

This contention would be compelling were it supported by the facts, but, as the evidence refutes, utterly, the premises, I am unable to perceive the least merit in the argument. That the bond and mortgage were given to the Burlington City Loan and Trust Company, not in fulfillment and performance of the proposition, but solely as a personal indemnification, to secure it against loss or damage in the event that the corporate bonds and the mortgage on the plant were not forthcoming in satisfaction of the creditors' claims, as contemplated by Walter Wood's proposal of June 29th, 1916, later modified, is shown conclusively by the documents hereinbefore quoted and by the undisputed testimony. As to this there can be no doubt. The very terms of the bond and mortgage, for a round sum and payable on demand, are absolutely irreconcilable with the plan for denominational bonds distributable proportionately, amongst the creditors, and carrying a credit extending over a period of years. To regard the bond and mortgage as a determination on the part of Mr. Wood to own the property individually, and that they were intended to be in lieu of corporate bonds, as suggested in Mr.

Ramsay's letter of August 2d, 1916, would be repugnant to the entire body of proof in the case. The whole thing is so simple. The trust company used the claims for the purposes for which they had been assigned without having in hand at the time the bonds and mortgage it had agreed to secure before parting with the interest in the claims. It trusted Wood to do this, and when he later on formed the Florence Foundry Pipe and Machine Company, and caused that company to execute and deliver, or tender for delivery, its bonds and mortgages as agreed upon with the creditors, he satisfied his personal bond and mortgage to the trust company and was entitled to their surrender. It may be that had Wood declined to carry out his bargain the bond and mortgage would have enured, by subrogation, to the creditors, but my judgment is that as they were given as a personal indemnity only, the creditors would have had to look to the trust company for damages for its misfeasance. However, it is unnecessary to decide whether the bond and mortgage would have been ultimately beneficial to the creditors if Wood had defaulted and refused to perform, for it appears clearly that he discharged his undertaking to them. The corporate bonds and mortgage which Wood agreed to have executed were to be for the aggregate amount of the accepting creditors' claims with interest from the due date. The interest, included in the principal of the bonds, was calculated to March 15th, 1917 (presumably, because Wood had agreed with the trust company to have the corporate bonds and mortgage ready for delivery within ninety days from November 15th, 1916), and the bonds and interest from that date compounded were paid over to the creditors and tendered to the Sloss company in satisfaction of their claims. More than this, Wood was not called upon to do save, perhaps, strictly, the interest, paid in cash, should have been calculated from February 16th, 1917; but this is a trifling matter of which no point was made and none could have been because the limitation ran to the trust company. The Sloss company was not justified in refusing to accept the bonds and cash because the tender was delayed. No time was stated for the fulfillment of the agreement and time was not of the essence of the contract. Besides it was a creditor and anxiously concerned in a favorable outcome of the

27

affairs of the Camden Iron Works. Mr. Wood, who is a man of great wealth, had agreed to assume personal responsibility for its debts in case he should become the purchaser. He was endeavoring by a single operation to rescue from financial disaster the two companies (Florence and Camden), in both of which he and his family was vitally interested; and all during the delay, due to the combined efforts, the Sloss-Sheffield company remained quiescent. And it was not until after the creditors' committee became impatient and the screws were put to Mr. Wood, so to speak, and as a result of which he performed, that the Sloss-Sheffield company raised its voice in protest and assumed the untenable attitude set up in its counter-claim. The Sloss-Sheffield company cannot, of course, be compelled to receive the bonds and interest as prayed in the bill, but they are at their call in the hands of the committee.

There was considerable discussion in the argument and in the briefs that, as the creditors' committee did not purchase the plant, their office, under the protective agreement, terminated, and that their negotiation of the final settlement was unauthorized and not binding upon the Sloss-Sheffield company. Whatever may be the true construction of the protective agreement in this respect, it is, nevertheless, the fact that the committee acted throughout for the creditors, in all of the dealings with Walter Wood, and with their concurrence. This applies to the Sloss-Sheffield company which, as already stated, sent its claim to Mr. Ramsay, one of the committee, for delivery to Mr. Wood. Although Mr. Ramsay was the private counsel of the company he was also its selection as a member of the creditors' committee, and his actions in the dual capacity must be regarded, primarily, as those of the committeeman. It is, too, a permissible construction of the protective agreement that the committee itself had authority to accept Mr. Wood's proposal and to assign the claims to the Burlington City Loan and Trust Company; and the mere fact that instead, the creditors, under the advice of the committee, assigned their claims direct to the trust company did not imply that the creditors dealt directly and that the agency was at an end. On the contrary, the fair interpretation of the later conduct of the creditors in availing them-

selves of the services of the committee, is that its authority remained unimpaired by this incident. But whether the committee represented the creditors, and had or had not authority to close out the final settlement, are purely academic and wholly immaterial questions. The acceptance of Walter Wood's proposition of June 29th, 1916, bound the Sloss-Sheffield company and the other creditors to take the bonds in payment of their debts. Nothing more was to be done by them other than to receive the bonds, and the acceptance of them, and of the interest by the committee on their behalf, was merely perfunctory.

The bond and mortgage will be ordered delivered up for cancellation and the counter-claim for foreclosure will be dismissed, with costs.

The prayer of the counter-claim for a personal decree against Walter Wood and the three members of the committee will be denied. If the court had power to assess damages against Walter Wood for breach of contract, or against the committeemen for breach of duty, which it has not, the prayer would be denied for want of proof of a breach in either case.